UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

vs.                                                      CASE NO. 8:08-CV-1409-T-27TGW

AEROKINETIC ENERGY CORP., and
RANDOLPH E. BRIDWELL,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is the Magistrate Judge's Report and Recommendation (Dkt. 73) on the SEC's Motion to Set Disgorgement and Prejudgment Interest, and Impose a Civil Penalty Against Defendants Aerokinetic Energy Corporation and Randolph E. Bridwell (Dkt. 54). The Magistrate recommends that Defendants be ordered to pay, jointly and severally, disgorgement of $555,000, plus prejudgment interest. The Magistrate further recommends civil penalties of $250,000 against Aerokinetic and $130,000 against Bridwell. Defendants filed objections (Dkt. 74) and moved for leave to file additional evidence (Dkt. 75).

Upon consideration of the Report and Recommendation, Defendants' objections, and Defendants' motion, and having conducted an independent examination of the file, the Court is of the opinion that the motion to file additional evidence (Dkt. 75) should be denied, and the Report and Recommendation (Dkt. 73) should be adopted, confirmed, and approved in all respects.

### Standard

Any "portions of the report or specified proposed findings or recommendations" to which Defendants object are reviewed *de novo*. 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3). In

making a *de novo* review, the Court has discretion to refuse additional evidence and to decline to consider arguments which were not presented to the Magistrate. *See Williams v. McNeil*, 557 F.3d 1287, 1291-92 (11th Cir. 2009).

## Discussion

After the SEC filed this action, Defendants entered into separate consents for entry of Judgment of Permanent Injunction and Other Relief. (Dkts. 47-1, 47-2). Defendants stipulated that in conjunction with a motion to determine disgorgement and civil penalties, they would be precluded from arguing they did not violate the federal securities laws. (*Id.*). Defendants further stipulated that the allegations of the complaint would be accepted as true. (*Id.*).

Notwithstanding their stipulations, Defendants opposed the SEC's motion, arguing that the factual predicate of the securities violations in the Complaint has been "overtaken or superseded by [the] actual results" of their business. (Dkt. 59 at 2). And, to support their argument, Defendants submitted evidence that contradicted the facts alleged in the complaint.

Unsurprisingly, the Magistrate rejected Defendants' attempt to rewrite the stipulated facts alleged in the complaint. *See Christian Legal Soc. Chapter of the Univ. of Cal., Hastings College of the Law v. Martinez*, --- U.S. ----, 130 S. Ct. 2971, 2983 (2010) (refusing to consider arguments which contradicted the parties' stipulation). This Court likewise rejects the objections, arguments, and evidence which contradicts Defendants' stipulations.

1.  **The evidence**

Defendants entered into 'Consents' which contained the following provision:

> [Aerokinetic and Bridwell] further agree[] that in connection with the Commission's motion for a civil penalty, and at any hearing held on such a motion: (a) [Aerokinetic and Bridwell] will be precluded from arguing that [they] did not violate the federal securities laws as alleged in the Complaint; (b) [Aerokinetic and Bridwell] may not

2

> challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for a civil penalty, the parties may take discovery, including discovery from appropriate non-parties.

(Dkts. 47-1, 47-2). Consistent with paragraph (d) of this provision, Defendants submitted declarations, deposition testimony, documentary evidence, and a DVD in response to the SEC's motion. (Dkt. 59, Exs. A-H; Dkt. S-1). Defendants argue the Magistrate failed to consider this evidence and, instead, based his decision solely on the stipulated facts alleged in the complaint.

The Court has reviewed Defendants' exhibits. Several were offered to contradict the stipulated facts. *See Martinez*, 130 S. Ct. at 2983. Other exhibits suggest that Defendants developed a prototype in 2007 or 2008 and that certain witnesses believed the technology was viable. This evidence, however, fails to detract from the numerous representations to investors which, Defendants stipulated, were false. Still other exhibits suggest that Defendants have now developed a working device. But this is immaterial to the misrepresentations Defendants made several years ago. In sum, Defendants' evidence is immaterial and unpersuasive.[1]

Defendants request to supplement the record with additional evidence. But they have not demonstrated why this evidence was not filed when the matter was under the Magistrate's consideration. Given the lack of explanation, the Court is not inclined to receive evidence that Defendants did not first present to the Magistrate. *See Williams*, 557 F.3d at 1291-92.

Although not well-developed in their papers, Defendants arguably suggest that the Magistrate

---

[1] The investors' declarations are discussed below.

3

should have conducted an evidentiary hearing. To the extent Defendants make such an argument, it is without merit. In their opposition to the SEC's motion, Defendants did not request an evidentiary hearing:

> As reflected in the above caption, Defendants request oral argument on the SEC Motion pursuant to LR 3.01(j). Defendants believe the Court will be aided by oral presentations of the parties' counsel and will be in a better position to examine the videos, photographs and related technical information which supports the *bona fides* of Defendants' alternative energy devices. Defendants estimate that two (2) hours of the Court's time is needed for oral argument.

(Dkt. 59, n.1). Nor did they object that the hearing only consisted of oral argument:

> MR. BARTKO: . . . When I received -- or when we received the notice of the hearing for today, I was perhaps erroneously assuming that we were going to have something in the nature of an evidentiary hearing as opposed to oral argument. I'm prepared for either.

(Dkt. 71, Hr'g Tr. 22:2-6, July 27, 2010). And they raised no contention that the absence of an evidentiary hearing denied their right to due process:

> THE COURT: Are you suggesting you're being denied due process if we don't have an evidentiary hearing?
>
> MR. BARTKO: No.

(Hr'g Tr. 23:9-11).

Defendants still have not requested an evidentiary hearing in their objections or their motion to file additional evidence. They request, consistent with the Consents, a "forum to present affidavits, declarations, excerpts of sworn deposition or investigative testimony and documentary evidence." (Dkt. 74 at 13). Contrary to their argument, Defendants have already been afforded an opportunity to present their evidence, consistent with the Consents.

Under the circumstances, to the extent Defendants complain that they were denied an evidentiary hearing, Defendants waived the argument that an evidentiary hearing was required. On

4

this record, the Court is not inclined to consider such an argument in the first instance.[2] *See Williams*, 557 F.3d at 1291-92.

Defendants' procedural objection and objections 1, 3, the first part of 4, and 5 are overruled.

## 2. The status of the product

The Magistrate found that "Neither product, however, had advanced past the early stages of development." (Dkt. 73, R&R at 3). Although Defendants object, this finding is clearly supported by paragraph 4 of the complaint, which states, "Among other things, Aerokinetic's purported energy technology and products are, at best, in the early development stage." Objection 2 is overruled.

## 3. The amount of disgorgement

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." *S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). The Magistrate found the SEC produced a reasonable estimate of $555,000 in ill-gotten gains, representing the funds unlawfully obtained from investors. The Magistrate also found Defendants waived any challenge to the SEC's initial showing. The Court agrees. Accordingly, the burden "shifts to the defendant to

---

[2] Defendants do not argue that Fed. R. Civ. P. 55(b)(2) required an evidentiary hearing. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005) (noting Rule 55 provides "guidance" for handling a motion for judgment where a defendant has stipulated to the facts alleged in the complaint). Had Defendants made this argument, however, it would be rejected for the same reasons.

Unlike Aerokinetic and Bridwell, the defendant in *Smyth* "formally moved the court to hold an evidentiary hearing to establish the facts essential to his . . . legal argument." *Id.* at 1230. He "also informed the court that he was still waiting to depose one of the SEC's key witnesses." *Id.* In contrast, Aerokinetic and Bridwell submitted their evidence in conjunction with their opposition papers, consistent with the manner in which they agreed disgorgement and penalties would be determined. They made no objection that the hearing consisted only of oral argument or that the absence of an evidentiary hearing deprived them of due process. *See id.* at 1232. Instead, they chose to stand on the evidence they had submitted. *Cf. id.* at 1232 n.13 (evidentiary hearing not required under Rule 55(b)(2) where all essential evidence is in the record). Defendants cannot hold their objection until the Magistrate has issued an unfavorable recommendation. *See Williams*, 557 F.3d at 1291-92 ("Because the magistrate judge system was created to help alleviate the workload of the district judges, 'it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and-having received an unfavorable recommendation-shift gears before the district judge.'") (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir.1988)).

Even now, Defendants do not request an evidentiary hearing but "a forum to present affidavits, declarations, excerpts of sworn deposition or investigative testimony and documentary evidence." (Dkt. 74 at 13). As discussed, Defendants have already had the opportunity to present this evidence, consistent with the Consents.

demonstrate that the SEC's estimate is not a reasonable approximation." *Id.*

Defendants argue $555,000 does not constitute 'profits resulting from the fraud.' This argument is rejected, as Defendants' profits from the fraud consisted of all funds Defendants took from investors under false pretenses.

Defendants request an offset of some $538,000 for claimed business expenses. The Magistrate found Defendants failed to substantiate their alleged business expenditures. The Court agrees. The unsworn and unexplained spreadsheet (Dkt. 59, Ex. G) is insufficient to satisfy Defendants' burden of demonstrating that $555,000 is not a reasonable approximation of their ill-gotten gains.

The Magistrate recommended denying the offset for the additional reason that the scheme alleged in the complaint was entirely fraudulent. The Magistrate found Aerokinetic existed "simply to obtain investors' money under false pretenses, money the defendants spent at their sole discretion, unrelated to the investors' expectations of the purposes, risks and rewards of entrusting the defendants with their investment dollars." (R&R at 10) (quoting *S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1115 (9th Cir. 2006)).

Although Defendants object, the Magistrate's finding is supported by the stipulated facts alleged in the complaint. Contrary to Defendants' misrepresentations, Aerokinetic had "no operating power station or functional electric car, and no patents, license agreements, contracts, suppliers, customers, sales, revenue, or market share." (Compl. ¶ 4). Defendants' representations of their existing business were based on devices they "would like to build in the future" and an "idea that ha[d] not even been developed." (Compl. ¶¶ 30, 31). Under false pretenses, Defendants obtained in excess of $535,000 from investors which Bridwell used, repeatedly, for his own personal expenses. (Compl. ¶¶ 2, 20, 47-49).

In any event, the requested offset is unpersuasive. Defendants do not seek an offset for legitimate expenses made in the fraud, which some courts have exercised their discretion to deduct. *See Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071, 1077 (S.D.N.Y. 1990) (allowing offset for brokerage commissions incurred in executing fraudulent trades); *S.E.C. v. Thomas James Assocs., Inc.*, 738 F. Supp. 88, 92 (W.D.N.Y. 1990) (allowing offset for commissions, telephone charges, and underwriting expenses incurred in market manipulation scheme). Rather, Defendants request an offset for items they allegedly paid for using the fraudulently-obtained funds.

Courts have the power to order disgorgement of "a sum of money equal to all the illegal payments [a defendant] received." *S.E.C. v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985). How a defendant chooses to spend his ill-gotten gains, whether it be for business expenses, personal use, or otherwise, is immaterial to disgorgement. *See, e.g., S.E.C. v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 15-16 (D.D.C. 1998); *S.E.C. v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1087 (D.N.J. 1996), *aff'd*, 124 F.3d 449 (3d Cir. 1997); *S.E.C. v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214-15 (E.D. Mich. 1991), *aff'd*, 12 F.3d 214 (6th Cir. 1993); *cf. S.E.C. v. Warren*, 534 F.3d 1368, 1370 n.2 (11th Cir. 2008) (noting "con artists [cannot] escape disgorgement liability by spending their ill-gotten gains").

Defendants should not be permitted to offset the amounts wrongfully obtained from investors, even if some of the funds were spent in attempting to develop a legitimate business, as Defendants contend. Accordingly, the Court is not persuaded that Defendants should be granted leave to offer additional evidence to explain, in detail, how they spent the investors' funds. Defendants reaped $555,000 in ill-gotten gains.[3] That entire amount must be disgorged. *See Warren*,

---

[3] The complaint alleged that "Defendants have raised more than $535,000 from at least 24 investors . . . ." (Compl. ¶ 20). The SEC submitted an affidavit which identified $555,000 in funds taken from investors. (Dkt. 54-1, Torres Aff.). As noted, Defendants waived any challenge to the amount taken from investors. (*See* Hr'g Tr. 28:13-21).

534 F.3d at 1370 (no abuse of discretion where "disgorgement was imposed in the amount of proceeds [defendant] received from unlawful transactions"). Accordingly, objections 6, 7, and 8 are overruled.

4. **Additional factors in determining disgorgement**

Defendants appear to argue the Magistrate should have determined disgorgement by considering the factors outlined in *S.E.C. v. Lybrand*, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003). In *Lybrand*, the sole issue was "whether to impose civil monetary penalties." 281 F. Supp. 2d at 729. *Lybrand* therefore considered only the "[g]eneral factors that courts look to in imposing those penalties." *Id.* at 730. There is nothing in *Lybrand* which requires consideration of factors other than the amount of a defendant's ill-gotten gains in determining disgorgement. *See Warren*, 534 F.3d at 1370 (finding no abuse of discretion in ordering disgorgement of proceeds received from unlawful transaction and noting ability to pay (one of the factors in *Lybrand*) is "[a]t most . . . one factor to be considered in imposing a penalty.") (emphasis added). Defendants' objection to the standards applied by the Magistrate and the second part of objection 4 are therefore overruled.

5. **The investors' declarations**

The Magistrate "discounted substantially" the declarations which several investors submitted in opposition to the SEC's motion. (R&R at 14). Defendants object to the weight this evidence was given, arguing Aerokinetic's CEO was prepared to testify about each investor's sophistication and relationship with the company. But these factors played no part in the Magistrate's decision.

Defendants object to the Magistrate's finding that the declarations may have been obtained based on misleading information. The declarations, however, stated the investors were aware the SEC was seeking disgorgement and penalties for "possible inadvertent violations of the securities laws." (Dkt. 59, Ex. B). The Court agrees with the Magistrate that, given the stipulated facts,

8

Defendants have admitted to far more than 'possible inadvertent' securities violations. Accordingly, the Court agrees with the Magistrate's discounted reliability of the declarations.

Defendants suggest the substance of the declarations is supported by sworn deposition testimony which was not presented to the Magistrate. Yet, Defendants have not explained why they did not previously file these depositions. Absent explanation, the Court is not inclined to permit Defendants to supplement the record. *See Williams*, 557 F.3d at 1291-92. Objection 9 is therefore overruled.

### 6. Civil penalties

The SEC is entitled to civil penalties upon making "'a proper showing' that a violation has occurred and a penalty is warranted." *Warren*, 534 F.3d at 1370 (quoting 15 U.S.C. §§ 77t(d); 78u(d)(3)). Defendants do not object to the Magistrate's recommendation of third-tier penalties. They only object to the amount of the penalty.

Civil penalties are to be determined "in light of the facts and circumstances." 15 U.S.C. §§ 77t(d); 78u(d)(3). Defendants contend the recommended penalties "fail to take into consideration any of the factors the Court must consider in determining the degree of culpability of the Defendants in violating the Federal securities laws." (Dkt. 74 at 18-19). Defendants appear to reference the factors discussed in *Lybrand*, which include:

> (1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing, (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons, (6) defendants' lack of cooperation and honesty with authorities, if any, and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

281 F. Supp. 2d at 730.

Defendants' objection is meritless. The Magistrate recommended a substantially lesser

9

penalty than the maximum allowed by the statute. In doing so, he expressly considered the egregiousness of the violations, that Defendants' scheme consisted of fraud and deceit, that there were numerous material misrepresentations and omissions, that Defendants accepted responsibility for their wrongdoing, that the loss to investors was substantial, and that Defendants cooperated rather than requiring a protracted and expensive trial. (R&R at 19-24). The Magistrate also accounted for Defendants' financial situation in considering the investors' declarations which asked that the company not be jeopardized by the imposition of substantial penalties. (R&R at 22). And the Magistrate noted that Aerokinetic appears to have ceased its illegal conduct. (*Id.*).

Defendants made no effort to demonstrate that the Magistrate failed to consider "a fact that should be given significant weight." *Warren*, 534 F.3d at 1370. Indeed, Defendants have not shown that any factors in *Lybrand* warranted a lesser penalty. Defendants suggest that a substantial penalty would lead to the demise of the company, which is another way of saying the company is unable to pay such a penalty. This factor, however, "does not merit significant weight in comparison to the other equities." *Warren*, 534 F.3d at 1370.

Defendants violated the securities laws, and a penalty is warranted. In recommending the penalty, the Magistrate carefully and conscientiously weighed the facts and circumstances of this case. Having made a *de novo* review of the record, the Court agrees with the Magistrate. Objection 10 is overruled.

**Conclusion**

Accordingly, it is ORDERED that

1) Defendants' motion for leave to file supplementary evidence (Dkt. 75) is DENIED.

2) Defendants' objections (Dkt. 74) are OVERRULED.

3) The Magistrate's Report and Recommendation (Dkt. 73) is adopted, confirmed, and

10

approved in all respects and is made a part of this order for all purposes, including appellate review.

4) Defendants Aerokinetic and Bridwell are ordered to pay disgorgement of ill-gotten proceeds, jointly and severally, in the amount of $555,000, plus prejudgment interest. Within 10 days, the parties shall file a calculation of the current amount of prejudgment interest.

6) Defendant Aerokinetic is ordered to pay a civil penalty of $250,000.

7) Defendant Bridwell is ordered to pay a civil penalty of $130,000.

8) Judgment will be withheld pending the parties' submission of the prejudgment interest calculation.[4]

**DONE AND ORDERED** on this 15th day of December, 2010.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[4] Defendants' counsel Gregory Bartko's *pro hac vice* admission has been suspended based on his felony conviction in the Eastern District of North Carolina. (Dkt. 79).